# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE TERRELL, | : | |
| Plaintiff, | : | |
| vs. | : | CA 19-0402-MU |
| ANDREW M. SAUL, Commissioner of Social Security, | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Willie Terrell brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 20 & 23 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

---

[1] The parties in this case waived oral argument. (*See* Docs. 21 & 24).

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 20 & 23 ("An appeal from a
(Continued)

**I. Procedural Background**

Plaintiff filed applications for disability insurance benefits and supplemental security income on July 25, 2016, alleging disability beginning on July 13, 2016. (Tr. 171-74 & 175-79). Terrell's claims were initially denied on November 8, 2016 (Tr. 79-80, 99-100, 103-08 & 109-14) and, following Plaintiff's December 5, 2016 request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 115-17), a hearing was conducted before an ALJ on July 19, 2018 (Tr. 34-59). On October 29, 2018, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to social security benefits. (Tr. 11-21). More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Terrell retains the residual functional capacity to perform those medium jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 16-21 *with* Tr. 56-59). On October 29, 2018, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see* Tr. 169-70); the Appeals Council denied Terrell's request for review on July 1, 2019 (Tr. 1-4). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to obesity, back pain, anxiety/depression, hypertension, history of stroke/TIA, and dementia. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.     The claimant has the following severe impairments: degenerative disc disease, obesity, anxiety, and depression (20 CFR 404.1520(c) and 416.920(c)).**

---

judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

. . .

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

. . .

**5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can occasionally climb ramps and stairs, stoop and crouch; he should never climb ladders, ropes or scaffolds, kneel or crawl; he can have only occasional exposure to extremes of cold as well as vibration; he should have no exposure to hazards such as unprotected heights and dangerous machinery; he would be able to understand, remember, and carry out simple instructions and tasks for 2-hour blocks of time; and he can tolerate changes in the workplace that are infrequent and gradually introduced.**

. . .

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7. The claimant was born on November 16, 1961 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in**

> **significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**
>
> . . .
>
> **11.   The claimant has not been under a disability, as defined in the Social Security Act, from July 13, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 13, 14, 16, 20 & 21 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to

---

[3]   "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

      The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

On appeal to this Court, Terrell asserts two reasons the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in rejecting the diagnosis of dementia, which was based on evidence he failed to recognize, and further erred in failing to fully and fairly develop the record in regards to the dementia diagnosis; and (2) the ALJ erred in rejecting the opinions of the treating, Dr. Perry Timberlake, while relying instead on the opinion of a physical therapist, a non-acceptable medical source.

A. **The Dementia Diagnosis and Whether the ALJ Erred in Failing to Develop a Full and Fair Record**. Terrell's first assignment of error is that the ALJ erred in rejecting the dementia diagnosis of Dr. Donald Blanton and, further, that she erred in failing to fully and fairly develop the record regarding the dementia diagnosis. In essence, what Plaintiff appears to be arguing is that the ALJ erred in failing to recognize the dementia diagnosis of Dr. Blanton as a severe impairment and that she should have obtained additional information once that diagnosis was made. The undersigned disagrees with Plaintiff's argument in this regard.

The dementia diagnosis arose in the context of Dr. Blanton's October 19, 2016 consultative examination, the examiner opining that the mild dementia was likely "due to CVA [cerebrovascular accident, that is, a stroke].". (*See* Tr. 363-64). Dr. Blanton appears to have based this diagnosis principally on the results of the Wechsler Memory Scale ("WMS") IV he administered (*see id.* at 364), as this would not be unusual, *see Hull v. Berryhill,* 2018 WL 4538996, *8 (E.D. Mo. Sept. 20, 2018) (consulting psychologist diagnosed plaintiff with dementia based, at least in part, on administration of the Wechsler Memory Scale IV). The memory scores produced on administration of

6

the WMS IV, of course, stand in contrast with the memory portion of the mental status examination by Dr. Blanton, with Terrell being able to name the President of the United States, perform calculations, interpret similarities and proverbs, and do digits forward and backwards. (*See* Doc. 364). The memory portion of the mental status examination by Dr. Blanton finds further support in the record from Plaintiff's own treating physician, Dr. Perry Timberlake, who specifically observed on examination of Plaintiff on April 17, 2018, that both recent and remote memory were normal. (Tr. 416). While there can be little question but that Dr. Timberlake made reference to Plaintiff's history of strokes affecting his speaking, hearing and speech (*see, e.g.,* Tr. 412), neither Dr. Timberlake nor any other physician who examined or treated him noted any problems with Terrell's memory or suggested that he may be suffering from dementia.

      In light of the foregoing and, specifically, because it is clear that Dr. Blanton diagnosed mild dementia based on the results of the WMS IV he administered, the Court does find that the ALJ erred in rejecting that diagnosis as not being "based on objective testing." (Tr. 19). Nevertheless, even though the ALJ erred in failing to accept this diagnosis and in failing to identify whether Plaintiff's mild dementia was a severe impairment or a non-severe impairment, any such errors were "harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process." *Burgin v. Commissioner of Social Security,* 420 Fed.Appx. 901, 903 (11th Cir. Mar. 30, 2011) (citation and footnote omitted)). In particular, as reflected above, the ALJ proceeded to the third, fourth, and fifth steps of the sequential evaluation process after determining that Terrell had severe impairments of degenerative disc disease, obesity, anxiety, and depression (*compare* Tr. 13 *with* Tr. 14-21), *compare Burgin,* 420

7

Fed.Appx. at 903 n.3 ("The ALJ proceeded further in the sequential evaluation process because he determined that Burgin had a severe impairment due to his obstructive pulmonary disease.") *with id.* at 902 ("The finding of *any severe impairment*, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." (emphasis supplied)), and, indeed, limited the claimant to medium work that would require only the ability to understand, remember, and carry out simply instructions and tasks for 2-hour blocks of time and where changes in the workplace are infrequent and gradually introduced (Tr. 16),[5] limitations that account for Plaintiff's mild dementia,[6] *compare Sanchez v. Commissioner of Social Sec.,* 507 Fed.Appx. 855, 859 (11th Cir. Feb. 8, 2013) (finding that "even if the ALJ erred by failing to identify BPD as a severe limitation at step two, the ALJ properly considered the symptoms and limitations that

---

[5] The ALJ specifically considered Dr. Blanton's report during her analysis at the third step of the sequential evaluation process (*see* Tr. 15) and determined that Terrell does not have an impairment or combination of impairments that meet or medically equal Listing 12.02 (*id.*). And while Plaintiff states that the ALJ erred in her analysis of the "B" criteria (*compare* Doc. 17, at 8-9 *with* Tr. 15), the Plaintiff simply has not established through the evidence of record that he has two "marked" limitations in the relevant areas or one "extreme" limitation in the relevant areas (*compare* Doc.17, at 8-9 *with* Doc. 14 (transcript of administrative proceedings)); therefore, Terrell has not established that he meets or equals Listing 12.02, *cf. Bellew v. Acting Commissioner of Social Sec.,* 605 Fed.Appx. 917, 925 (11th Cir. May 6, 2015) (finding that although the claimant "had the burden of providing medical reports showing that his conditions met the specific criteria of the Listings, he provided no medical evidence showing that he had marked limitations in activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace."), which would require reversal of the ALJ's decision at step three of the sequential evaluation process.

[6] Certainly, Dr. Blanton never indicated that the mild dementia, or for that matter the mild anxiety/depression, would limit Plaintiff's ability to function (*see* Tr. 363-64) beyond the limitations noted by the ALJ in her RFC determination.

would result from BPD at the latter stages of the five-step disability evaluation.") *with* *Pinion v. Commissioner of Social Sec.,* 522 Fed.Appx. 580, 582 (11th Cir. Jun. 19, 2013) ("Where an ALJ determines at step two of the sequential evaluation process that the claimant's mental impairments caused limitations in concentration, persistence, or pace, the ALJ must include those limitations in the hypothetical questions posed to the VE. However, the ALJ may instead include in the hypothetical questions the limitation that the claimant is restricted to unskilled work if the medical evidence shows that the claimant can perform simple, routine tasks or unskilled work despite her limitations in concentration, persistence, or pace*.*" (citations omitted; emphasis supplied)).[7] Thus, there exists no harmful error as articulated by Plaintiff in his first assignment of error (*see* Doc. 17, at 7-9) and the Court further **REJECTS** Terrell's suggestion that the ALJ had a duty to develop the record in this case and order another consultative mental

---

[7] There is simply nothing in the record in this case that reflects limitations attributable to Plaintiff's mild dementia any greater than the limitations attributable to Plaintiff's anxiety and depression and, indeed, the evidence of record reflects that Plaintiff retains the ability to understand, remember, and carry out simply instructions and tasks for 2-hour blocks of time and can perform jobs where changes in the workplace are infrequent and gradually introduced (*see* Tr. 70-71 &75-76 (reflecting findings by a reviewing psychologist, Dr. Steven Dodds, who reviewed Dr. Blanton's consultative examination report—specifically, Blanton's diagnosis of mild dementia and mild anxiety/depression—and found that Terrell's ability to remember locations and work-like procedures and understand, remember and carry out very short and simple instructions is not significantly limited; that Plaintiff can sustain attention/concentration for two-hour periods to complete simple tasks during a regular workday at an acceptable pace and attendance schedule; that Terrell is able to respond to simple/infrequent changes in routine, etc.); *compare id. with* Tr. 249 (Plaintiff reported that he can pay attention for as long as he does not "hurt," can follow written instructions depending "on how physical they are[,]" and can follow spoken instructions unless his "hearing gets in the way")). Therefore, the limitations set forth in the ALJ's RFC determination (Tr. 16) and her hypothetical to the VE (Tr. 56-57), were sufficient to account for all limitations attributable to Plaintiff's mental impairments. As a result, the undersigned **OVERRULES** any implicit suggestion by Plaintiff, in his first assignment of error, that the ALJ erred in failing to include—in her RFC determination and in her hypothetical to the VE— sufficient mental limitations attributable to his dementia, anxiety, and depression (*see* Doc. 17, at 8-9).

examination so that she could make an informed decision (*see id.* at 9-11), particularly in light of the April 17, 2018 findings of the treating physician that Terrell's recent and remote memory were normal. The Court agrees with the Government that an additional consultative mental examination was not necessary in this case for the ALJ to make an informed decision. *See Castle v. Colvin,* 557 Fed.Appx. 849, 853 (11th Cir. Feb. 18, 2014) (observing that where the record is fully and fairly developed, a consultative examination is not necessary for an ALJ to make an informed decision).

      B.     **<u>Opinions of the Treating Physician, Dr. Perry Timberlake, versus the Opinion of a Physical Therapist</u>.** Plaintiff's only other assignment of error is that the ALJ improperly rejected the opinions of his treating physician, Dr. Perry Timberlake, while relying on the opinion of a physical therapist, that is, a non-acceptable medical source. The record in this case reveals that on four occasions, beginning on August 2, 2016 and ending on January 28, 2019, Dr. Timberlake completed four separate rote circle-the-answer or place a checkmark by the correct answer Physical Medical Source Statements and Clinical Assessment of Pain forms. (*See* Tr. 32-33 (January 28, 2019); 327-28 (August 2, 2016); 369-70 (February 4, 2017) & 419-20 (June 8, 2018)). The four Physical Medical Source Statements are all but identical, with Timberlake concluding that Terrell can perform less than sedentary work, concluding the he can only sit 2 hours in an 8-hour workday, stand or walk a total of 1 hour in an 8-hour workday, and lift and/or carry only five pounds occasionally. (*See id.* at 32, 327, 369 & 419). The first two pain assessment forms, completed on August 2, 2016 and February 4, 2017, respectively, reflect Timberlake's opinion that Terrell's pain is profound, intractable and virtually incapacitating and that any physical activity will increase the pain to such an

extent that bedrest and/or medication is necessary (Tr. 328 & 370); however, the latter two pain forms, completed on June 8, 2018 and January 28, 2019, respectively, appear to reflect an improvement in Terrell's pain, with findings that pain is present to such an extent as to be distracting to adequate performance of daily activities and that physical activity increases pain to such a degree as to cause distraction from task or total abandonment of task (Tr. 420 & 33).

"Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Sec. Admin.,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). Indeed, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg v. Commissioner of Social Sec.,* 179 Fed.Appx. 589, 591 (11th Cir. May 2, 2006) (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those

> reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

The ALJ analyzed Dr. Timberlake's opinions—on the Physical Medical Source Statements and Clinical Assessment of Pain forms the treating physician filled out—in the following manner:

> No weight is given to the medical source statement of Perry Timberlake, M.D. (Exhibits 3F, 9F, and 13F).[8] He found that the claimant had profound pain. Dr. Timberlake opined that the claimant could stand and[/]or walk for 1 hour a day and sit for 2 hours each day. He opined that the claimant could lift and carry no more than 5 pounds. He opined that the claimant required a cane to ambulate and his impairments would cause him to miss work more than three times each month. No weight is given to the opinion of Dr. Timberlake, as his findings are not based on objective examinations performed by him. Further, Dr. Timberlake's findings are inconsistent with the medical record as well as the claimant's subjective reports. The claimant reported that he engaged in exercise that include[ed] walking 4 miles a day; light yard work including raking leaves; and drove for one hour (Exhibit 10F). The claimant's physical therapist highlighted that the claimant demonstrated the ability to perform at least heavy work occasionally. Accordingly, no weight is given to the opinion of Dr. Timberlake.

(Tr. 19).

Good cause for failing to accord a treating physician's opinion substantial weight exists where, as here, the treating physician's own medical records do not support that opinion (or those opinions) and the evidence of record supports contrary findings. *Gilabert, supra*, 396 Fed.Appx. at 655. Here, the few positive objective findings made by Dr. Timberlake (*see, e.g.,* Tr. 332 (tenderness in the lumbosacral area and inability to

---

[8] The forms completed by Timberlake on January 28, 2019 (Tr. 32-33) are not marked as an exhibit; however, these forms are identical to those completed by Timberlake on June 8, 2018 (*compare id. with* Tr. 419-20).

perform straight leg raise on August 2, 2016); Tr, 402 (tenderness in the lumbosacral area on examination on July 5, 2017); Tr. 407 (tenderness in the lumbosacral area on May 2, 2017); Tr. 410 (tenderness in the lumbosacral area on February 14, 2017); & Tr. 412 (tenderness in the lumbosacral area on October 12, 2016)), are simply not sufficient to support the severe (indeed, virtually, debilitating) restrictions set forth by the treating physician on the Physical Medical Source Statements and Clinical Assessment of Pain forms (*compare id. with* Tr. 327-28, 369-70 & 419-20),[9] particularly since Dr. Timberlake noted on at least two occasions when he physically examined Terrell—that is, on December 22, 2017 and April 17, 2018—that Plaintiff was in no acute distress and was ambulating normally (Tr. 403 & 416). These latter findings by Timberlake are more consistent with the findings in the record as a whole, particularly from MedCenter Demopolis, which cover the period right after Terrell injured his back at work in June of 2016 through early July of 2016 (*see, e.g.,* Tr. 285-310), and the records from University Orthopedic Clinic and Spine Center from July 2016 through February of 2017 (*see, e.g.,* Tr. 356-57 & 373-99).[10] And, indeed, while there can be little question but that Terrell had some limitation of function after first hurting his low back at work in June of 2016 that impacted his ability to work (*see, e.g.,* Tr. 399 (on September 7, 2016, Dr. H.

---

[9] Besides, the forms are basically fill-in-the blank forms setting forth severe restrictions for which Dr. Timberlake supplied no medical basis, though he was provided the space for doing so. (*See* Tr. 327, 369 & 419 (the PCEs Timberlake completed each contained a space for the treating physician to state the medical basis for the restrictions noted; however, Dr. Timberlake did not pen one word of explanation)). Accordingly, the Court finds that the wholly conclusory PCEs were properly rejected for this additional reason.

[10] In addition, Terrell was consultatively examined by Dr. Walid W. Freij on October 5, 2016, who noted Plaintiff presented with an antalgic gait and was tender over the paraspinal muscles of the lumbosacral spine; however, Terrell was also noted to be in no acute distress and Freij specifically opined that Plaintiff could perform work-related activities that "would require him to stand or walk for prolonged periods of time." (Tr. 361; *see also* Tr. 359-60).

Chester Boston, an orthopedist, noted that Terrell should remain off work and begin physical therapy to address findings indicative of back pain with radicular symptoms)), along with some positive signs on physical examination (*compare, e.g.,* Tr. 287-306 (findings on physical examination of Terrell by physicians at MedCenter Demopolis reflect tenderness along the right lower back and, on one occasion, pain with rotation and bending at the waist) *with* Tr. 373-75 & 381-99 (examination findings from Dr. Boston reveal spinous and paraspinous tenderness on palpation of the lumbar region, mild muscle spasm, SI joint tenderness, and, at times, an antalgic gait; however, those notes also reflect normal paraspinous muscle tone, and, on several occasions, a non-antalgic gait)), the doctors at MedCenter Demopolis consistently observed that Terrell was in no acute distress (*see* Tr. 293, 298, 302 & 306) and Dr. Boston observed as early as December 6, 2016, after a round of three LESI blocks and physical therapy (*see* Tr. 382 & 384), that he believed Terrell was at maximum medical improvement (Tr. 384). Moreover, following the functional capacity evaluation ("FCE") and impairment rating ("PPI"), performed by a physical therapist, Nathan P. Click (*see* Tr. 376-79)—evaluations which were performed at Dr. Boston's request (*compare id. with* Tr. 384 ("He will be scheduled for a PPI and an FCE. He will return to see me once those test[s] are complete."))—Dr. Boston found Plaintiff had a 5% impairment rating of his lumbar region and the orthopedist released Terrell to return to work on February 22, 2017 (Tr. 372-75), noting as the only instructions/limitations the "FCE restrictions[]" (Tr. 372) set forth by Click (*compare id. with* Tr. 376-79). The Court reads Dr. Boston's February 22, 2017 examination notes and records as adopting in toto Click's FCE and PPI as his own (*see id.*) and, therefore, any specific reliance by the ALJ on Click's findings in rejecting

Dr. Timberlake's assessments does not amount to reversible error since Click's findings were adopted by Dr. Boston. Moreover, as the ALJ pointed out, Plaintiff's self-described daily activities included walking four miles a day for exercise, light yardwork,[11] self-care activities, driving normally, and normal community activities (*compare* Tr. 19 *with* Tr. 378; *see* Tr. 364 (Terrell reported to Dr. Blanton that he does light housework and some cooking, drives short distances, can shop and handle money, attends church, watches movies, and reads the Bible)), all of which are inconsistent with the contents of the treating physician's PCEs and CAPs.

Based on the foregoing discussion, the undersigned finds that the ALJ's decision to afford little weight to the opinions expressed by Dr. Timberlake on the PCEs and CAPs he completed is supported by substantial evidence because the preponderance of evidence in the record as a whole (including the treating physician's own medical examination records), as just cited to, do not in any manner support the severe restrictions noted by Dr. Timberlake. And when the propriety of the ALJ's rejection of Dr. Timberlake's opinions is combined with all the medical and other evidence of record (including Dr. Timberlake's own medical records) and the residual functional capacity evaluation of non-examiner, Dr. Thomas G. Amason (*see* Tr. 73-74), the Court finds the ALJ's physical RFC determination supported by substantial evidence.[12]

In light of the foregoing and because substantial evidence of record supports the Commissioner's determination that Terrell can perform the physical and mental

---

[11] Indeed, Dr. Timberlake's office notes from May 2, 2017 indicate that Terrell was mowing his grass on May 1, 2017. (*See* Tr. 406).

[12] As the previous discussion with respect to Plaintiff's mild dementia reflects, the "mental" portion of the ALJ's RFC determination is also supported by substantial evidence.

requirements of a range of medium work as identified by the ALJ, and Plaintiff makes no argument that this residual functional capacity would preclude his performance of the medium jobs identified by the VE during the administrative hearing (*compare* Doc. 17 *with* Tr. 56-58), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 1st day of May, 2020.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**
